499 So.2d 1320 (1986)
STATE of Louisiana
v.
Rodney K. LANDRY.
No. KA-5186.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1986.
*1321 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Terry Boudreaux, Asst. Dist. Atty., New Orleans, for plaintiff-appellee.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
Before WARD and ARMSTRONG, JJ. and PRESTON H. HUFFT, J. Pro Tem.
ARMSTRONG, Judge.
Defendant, Rodney Landry, appeals from his jury conviction for second degree murder for which he was sentenced to serve the remainder of his life at hard labor, without benefit of parole, probation or suspension of sentence.
According to the testimony of Cornell Gilmore, the defendant Rodney Landry and Donald Morton were visiting his home at 3724 Erato Street, Apartment C, on the morning of June 10, 1985. Donald Morton and Cornell Gilmore left the apartment to pick up some money which Gilmore had earned. They returned to the apartment where the defendant was still present. Approximately thirty minutes later, Clyde Pounds arrived. Pounds began arguing over money with the defendant who was seated at the kitchen table. Pounds grabbed the defendant out of the chair and dragged him downstairs where Pounds beat Landry's head against a car. Gilmore and Donald Morton tried to break up the fight. The defendant pleaded with Pounds to let him go. The defendant struck no blows. Afterwards all four men went back upstairs together by the fire escape. The defendant went inside the apartment while the others remained outside on the fire escape for a few minutes. The door to the apartment opened. Gilmore heard the voice of the defendant call out "Clyde". A shot rang out. Pounds fell fatally wounded. Gilmore knocked on a neighbor's door to get someone to call the police. Linda Gilmore, Cornell's sister who had been asleep upstairs, came to the apartment door. Cornell Gilmore did not see who fired the gun. However, according to the testimony of Officer Louis Trudeau, Gilmore told him during his investigation shortly after the incident that Rodney Landry did the shooting.
Donald Morton testified stating that he had arrived at the apartment at 8:00 a.m., where Rodney Landry and Cornell Gilmore were present. Two other people, Linda Gilmore and Sherry Gilmore, were asleep upstairs in the apartment. Donald Morton told of the altercation between the defendant and Clyde Pounds, shortly after Pounds arrived at the apartment. Pounds shook his hand in the defendant's face and slapped him. The fight proceeded outside the apartment in a parking lot with Pounds pushing the defendant against a car. After they had "cooled down a little bit", all four men went back up the apartment by the fire escape. The defendant tried to *1322 shake Pounds' hand, but Pounds refused. Landry went into the apartment. Pounds went back down to the car to get a cigarette. He lit the cigarette. Shortly thereafter, Pounds was standing in the doorway of the apartment when a shot rang out which struck him. Morton identified the defendant as the one with whom Pounds was fighting. However, Morton said that he did not see who shot Pounds.
Linda Faye Gilmore, the defendant's former girlfriend and Cornell Gilmore's sister, testified that she was asleep when Pounds was shot. She did not see anything.
Sherry Gilmore, Linda's niece, was also asleep in the apartment on the morning of the incident. She too awakened after Clyde Pounds was fatally shot. A few days later, the defendant was visiting the apartment again. He showed Sherry Gilmore his bruises from the fight with Pounds and remarked that "he (Pounds) got what he deserved."
The defense produced two witnesses. Deborah Brock testified that the defendant ate breakfast at Anita's, a restaurant, on the morning of June 10, 1985. Afterwards they went to his sister's house together. Mary Davis, the defendant's sister, said that she saw her brother and Deborah Brock early that morning at her house as she was leaving for the day. On cross-examination, it was revealed that Mary Davis had been previously convicted of obscenity while she was working as a cashier at an X-rated theater. Larry Zardis also testified that he saw the defendant eating breakfast at Anita's.
A review of the record reflects that there are no errors patent.
It should be noted however that there is a discrepancy in this record regarding the defendant's sentence. The minute entry of sentencing on October 20, 1985 reveals that the defendant was "to serve life at hard labor, custody D.O.C., credit for time served and court cost waived". The minute entry does not note that the defendant's sentence was to be served without benefit of parole, probation or suspension of sentence. However, the record contains the sentencing transcript. The trial court correctly imposed the mandatory sentence required by R.S. 14:30.1 including the prohibition against parole, probation or suspension of sentence. Thus, it appears that the sentence the defendant received is lawful.
On appeal defendant relies on two assignments of error, one of which is argued by defense counsel, the other by the defendant pro se. We affirm.

Assignment of Error No. 1
By this assignment of error, the defendant contends that there was insufficient evidence to justify a belief that he was the perpetrator of the homicide. Alternatively, the defendant alleges that the evidence justifies only a manslaughter verdict.
Defendant contends that no one saw who fired the fatal shot.
In reviewing the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Andrews, 452 So.2d 687 (La.1984). Where the conviction is based upon circumstantial evidence, R.S. 15:438 provides that such evidence must exclude every reasonable hypothesis of innocence. State v. Camp, 446 So.2d 1207 (La.1984); State v. Wright, 445 So.2d 1198 (La.1984). R.S. 15:438 does not establish a stricter standard of review than the more general rational juror's reasonable doubt formula; it is merely an evidentiary guide for the jury when considering circumstantial evidence. State v. Porretto, 468 So.2d 1142 (La.1985). "When a case involves circumstantial evidence and the [jury] reasonably rejects the hypothesis of innocence presented by the defendant ..., that hypothesis fails, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt." State v. Langford, 483 So.2d 979, 984 (La.1986), quoting *1323 from State v. Captville, 448 So.2d 676, 678, at 680 (La.1984).
The direct evidence reveals that four men went up to the apartment using the fire escape. Three men, including the victim stayed outside, while the defendant entered the apartment. Immediately before the shot was fired, a witness heard the defendant call "Clyde". The apartment door opened and the victim was shot in the chest. Because the jury rejected the defendant's alibi, his hypothesis of innocence, the fact that the defendant fired the shot which killed Pounds can be reasonably inferred from the circumstances, viewing the evidence in the light most favorable to the prosecution.
Alternatively, the defendant also maintains that the evidence justifies only a manslaughter verdict. Because of the fight between the defendant and the victim, the defendant maintains that the homicide was mitigated by "hot blood or sudden passion" such that the reviewing court may reduce the second degree murder to manslaughter, State v. Lombard, 486 So.2d 106 (La.1986). R.S. 14:31(1) provides that manslaughter is a homicide which would be murder but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a murder to manslaughter if the jury finds that the offender's blood had actually cooled at the time the offense was committed. "Sudden passion" and "hot blood" are not elements of the offense of manslaughter, they are mitigating factors in the nature of a defense which would exhibit a lesser degree of culpability. Lombard, supra at 110; State v. Tompkins, 403 So.2d 644 (La.1981). Because these factors, "sudden passion" and "heat of blood", are not elements of the crime, the State does not bear the burden of proof. Id. at 111, Footnote 9. Also, there is no requirement, as the State in this instance argues, that the factors be affirmatively established by the defendant. Id. Instead, the jury is free to infer the mitigating circumstances from the evidence. Id.
In reviewing the defendant's claim that a manslaughter verdict was appropriate and a second degree murder verdict inappropriate, this court should determine whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigating factors were not established by a preponderance of the evidence. Id. The evidence established that the defendant and the victim were engaged in a one-sided fight. The victim was obviously angry and struck blows harming the defendant. The evidence also indicates that the defendant did not strike back during the altercation, and that the fight was over, the participants "cooled down" when the men went back upstairs. The defendant went inside the apartment and several minutes passed and the victim again went back to the car in the parking lot with Donald Morton to get and later smoke a cigarette on the fire escape. As the door opened, the defendant called out "Clyde" and the victim fell fatally wounded. Thus, the mitigating factors were not established by the preponderance of the evidence. Instead, the evidence supports the conclusion that a verdict of second degree murder is appropriate because the rational fact finder could have found that the defendant's blood had actually cooled, viewing the evidence in the light most favorable to the prosecution.
This assignment of error is without merit.

Assignment of Error No. 2
In his pro se brief, the defendant assigns as error that his counsel provided ineffective assistance. The defendant seems to argue that at the preliminary hearing the evidence was insufficient for the trial court to find probable cause to bring the defendant to trial for second degree murder. He contends that because only Donald Morton testified at the hearing, his counsel was ineffective as he failed to call another witness, Cornell Gilmore, who would have testified *1324 differently. It also seems that the defendant contends that the evidence was insufficient to convict him at trial.
Ordinarily, a claim of ineffective assistance of counsel is properly considered on writs for post conviction relief, when the district court judge may order a full evidentiary hearing in the matter. State v. Daniels, 346 So.2d 672 (La.1977); State v. Jenkins, 419 So.2d 463 (La.1982). However, when the record discloses sufficient evidence to decide the issue of ineffective counsel raised by assignment of error on appeal, in the interest of judicial economy, that issue may be considered. State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff, 416 So.2d 528 (La.1982).
Appellant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Strickland, supra, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive the defendant of a fair trial. Id. The defendant must make both showings in order to prove that counsel was so ineffective as to require reversal.
In the instant case no preliminary examination was held. Donald Morton did testify at a pretrial hearing in a motion to suppress the identification which was held on October 4, 1985. The transcript of this hearing is not contained in the record. Both Donald Morton and Cornell Gilmore testified at trial. The defendant's counsel on appeal assigned as error that the evidence was insufficient to convict. The defendant's trial counsel cross-examined both witnesses extensively pointing out some variances in their statements. We note that the two witnesses' testimony were essentially consistent with each other. Defendant has alleged no circumstance which could be viewed as a deficiency much less an error so serious as to deprive the defendant of a fair trial.
This assignment has no merit.
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.