838 So.2d 34 (2003)
STATE of Louisiana
v.
Dedrick GRIFFIN.
No. 2002-KA-1703.
Court of Appeal of Louisiana, Fourth Circuit.
January 15, 2003.
*35 Harry F. Connick, District Attorney, Julie Tizzard, Assistant District Attorney, New Orleans, LA, For Plaintiff/Appellee.
Pamela S. Moran, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Chief Judge WILLIAM H. BYRNES III, Judge MAX N. TOBIAS JR., Judge DAVID S. GORBATY).
*36 DAVID S. GORBATY, Judge.
Dedric[1] Griffin appeals his conviction for first degree murder claiming that the grand jury indictment should have been quashed, and that the trial court erred in allowing testimony from his first trial to be entered into evidence at the second trial. For the following reasons, we affirm the conviction and sentence.

STATEMENT OF THE CASE:
Dedric Griffin was charged by grand jury indictment on March 2, 2000, with the first degree murder of Tiche Carter on December 11, 1999, when he had the intent to kill or inflict great bodily harm on more than one person, namely Carter's cousin, Patrick Parker, who survived a severe gunshot wound to the neck. La.Rev.Stat. 14:30. Following his arraignment, Griffin retained Jasper Pharr as counsel. At a motions hearing, the trial court found probable cause, but granted Griffin's motion to suppress the photo identification. The State filed a writ application with this Court,[2] which this Court granted, reversing the trial court's decision to suppress the identification.
Because his client was charged with first degree murder, Pharr filed a motion to appoint an attorney to sit second chair at trial. The court appointed the Orleans Indigent Defender Office (OIDP). The first trial of this matter ended in a mistrial due to a deadlocked jury.
Evidently, on May 21, 2001, jury selection began in Griffin's second trial.[3] At the first break on May 22, 2001, defense counsel Pharr presented a notice of conflict of interest to the court and made a record of his prior involvement with Parker, the State's star witness; Parker had been represented by Pharr in two prior guilty pleas and Pharr had signed the waiver of rights forms. The trial court ruled that the conflict of interest was evident and Pharr could not represent the defendant. The State then moved to remove all other offices, specifically OIDP, currently associated with the case because the attorneys were tainted with the conflict of interest as well. The trial court ruled that the OIDP attorneys and OIDP, as well as Pharr, were removed from the capital case.
Griffin filed a writ application with this Court,[4] arguing that the trial court erred in removing the OIDP attorneys from the case. This Court granted the writ application and reversed the judgment of the trial court.
The case again proceeded to trial, and a twelve-member jury found Griffin guilty as charged and recommended life imprisonment. Griffin waived delays and was sentenced. He immediately filed a motion for appeal.[5]

ERRORS PATENT:
A review of the record reveals none.

FACTS:
Detective Ricky Hunter testified that he found two separate blood trails at the scene: one leading to the apartment where Carter died, and the other leading to a place on the street where Parker had collapsed. He also found crack cocaine upstairs at 2525 Banks Street on a file cabinet. *37 He took statements from the man who lived in the apartment, William Thomas, and from Elton Bolman, an eleven-year-old who had witnessed the incident. The next night, he met with Parker at the hospital. Parker, who could not speak, mouthed to the detective, "Talk to my girlfriend." Catrina Colbert, Parker's girlfriend, gave Hunter a note that read, "I want you to find out why did DD[6] do this to me and my cousin Shipe.[7]" Colbert took Hunter to "DD's" house, 3230 Toulouse Street, where she said she and Parker had been on previous occasions. By researching the address, Hunter learned that Dedric Griffin lived there, and that he owned a champagne-colored Oldsmobile Aurora. After assembling a photographic line-up that included Griffin's picture, Hunter returned to the hospital where Parker identified the defendant. Dedric Griffin later turned himself in to police.
Parker testified that he and his cousin, Tiche Carter, were spending the day together. They were standing in front of 2525 Banks Street, when Griffin, a childhood friend, pulled up in front of the house, driving a champagne-colored Aurora. Griffin asked Parker and Carter if they had seen an individual named Derrick.[8] All of the men knew each other. Parker and Carter said they had not seen Derrick, so Griffin pulled away. About two minutes later, Derrick arrived. Griffin came walking from around the corner, and the four men began talking and laughing. While the men were talking, Parker's father walked by with Parker's stepbrother on the way to a shop on S. Rocheblave Street. After his father left, Parker and Tiche Carter went upstairs at 2525 Banks so that Carter could "chop up" the crack that Carter purchased from Derrick. Parker admitted that he knew he was violating his parole by associating with people with drugs, but he took the risk because of his close relationship with his cousin. As Parker and Carter went up the stairs, Griffin and Derrick came down. Within minutes, Griffin returned upstairs. Parker and Carter were both facing the door when Griffin appeared in the doorway with a gun. Parker testified that he flinched, and Griffin shot him in the neck. Parker briefly lost consciousness, and when he "came to," he saw Carter running from the room. Griffin was firing at Carter's back as Carter ran to the back of the house. Parker hopped up and ran out of the house, with Griffin now chasing him. Griffin chased him down the street toward S. Rocheblave. Parker could hear the gun clicking, but no more shots were fired. Griffin then turned around and headed back towards S. Dorgenois Street.
Parker admitted that Carter had used heroin that morning, and that he himself was in jail on a contempt of court charge at the time of his trial testimony.
The State introduced testimony that Griffin had given in his earlier trial through the court reporter that had transcribed it. Defense counsel had elicited the testimony. Griffin testified that he had a prior conviction for possession of marijuana. He said he talked to Carter on December 9, 1999, about purchasing marijuana. Carter told him to pick up the drugs on December 11, 1999, at 2525 Banks Street. He parked and spoke to one of Carter's female cousins who worked in a beauty salon on the corner. He did not notice anyone else in the area. He walked into 2525 Banks and up the stairs. *38 He found Carter bagging a large amount of drugs on a file cabinet. Within a minute, he heard the floor crack and turned to see a man wearing a red handkerchief around his face with a gun drawn. Griffin admitted that he was carrying a gun, and that he shot the man wearing the handkerchief because he was scared. Griffin claimed he did not know the man. (He learned later in a newspaper report that he had shot the man in the throat.) Carter then pulled a gun, so Griffin shot at him several times and fled. All three men ran in different directions. He admitted he knew Parker and his girlfriend, Trina.
Under cross-examination, Griffin admitted he owned the Aurora. He asserted that he did not know the man referred to as Derrick. Griffin believed that Detective Hunter had lied and that, contrary to other reports, there had been no children playing in the street when he arrived. Griffin claimed that he shot Parker straight on, and that Carter was facing him when he shot him. He admitted he knew he was not supposed to carry a gun as a convicted felon.
The pathologist employed by the coroner's office, Dr. James Traylor, said Carter had been shot twice. One injury was a graze wound. The other injury was a gunshot that "obviously" entered through the back, hit the heart and right lung, and exited out of the front of the body.

ASSIGNMENT OF ERROR ONE:
Griffin argues the trial court erred in failing to rule on a motion to quash the indictment filed by defense counsel sometime after June 22, 2001, and before this trial began. The motion was based on an argument that the indictment should have been quashed because the grand jury was selected in a racially or sexually discriminatory manner, citing State v. Langley, 95-1489 (La.04/03/02), 813 So.2d 356, and State v. Fleming, 2001-2799 (La.6/21/02), 820 So.2d 467. The record does not reveal whether or not the motion was ruled on, or if a hearing was held on the motion.
However, the case proceeded to trial with no objection, and thus any argument that the court did not rule on the motion was waived. La.Code Crim. Proc. art. 841.

ASSIGNMENT OF ERROR TWO:
Counsel for the defense filed a motion in limine to bar the State from using Griffin's testimony from the first trial because the testimony was critically flawed in that a conflict of interest existed between Griffin and his attorney, Pharr. The trial court denied the motion, and Griffin argues that the court erred.
Some background information is critical to this assignment. In writ 2001-K-1137 discussed above, Richard Rydelek and Jeffery Smith, OIDP defense attorneys, assigned as error that the trial court summarily removed defense counsel with whom the defendant had a strong attorney-client relationship, without conducting an evidentiary hearing. The attorneys noted that implicit in the State's motion to remove OIDP and the trial court's decision was the assumption that Pharr disclosed Parker's privileged communications to Smith and Rydelek. Yet the OIDP attorneys contended that they (the penalty phase attorneys) had practically no contact with Pharr until the first day of trial on May 21, 2001. Along with Pharr, they stated on the record as officers of the court that Pharr had made no mention of Parker or any attorney-client communications. They attached Pharr's affidavit in which he declared that he never violated his obligation to Parker by divulging privileged communications. The defense attorneys argued that the State or the trial court provided no basis for the decision that OIDP had to be removed because the entire office was "tainted." They contended *39 that if the court had any legitimate concerns about a breach of an attorney-client privilege, a hearing should have been held to explore the violation. However, they contended that a hearing was not necessary in light of the assertions by Pharr, Smith, and Rydelek that no breach occurred. The OIDP attorneys argued that the trial court erred by severing a well-established attorney-client relationship in a capital case without cause. In reversing the trial court, this Court stated:
In the instant case it is not clear why the trial court decided that the OIDP attorneys on the case and the entire office should be removed from this capital case. The State had alleged that information about Mr. Parker had been shared by all the defense attorneys, but provided nothing to support its allegation. The defense attorneys persuasively argue that only Mr. Pharr had the conflict of interest because he had represented the State's main witness, Mr. Patrick Parker, years before and had an attorney-client relationship; therefore, Mr. Pharr could not use privileged information about Mr. Parker to discredit his testimony. However, Mr. Smith and Mr. Rydelek had never represented Mr. Parker; they had never discussed Mr. Parker with Mr. Pharr; and they had never had an attorney-client relationship with Mr. Parker. They explained to the court that their knowledge of Mr. Parker was garnered from the public records of his prior guilty pleas, and they were not privy to any confidential information.
Although the trial court did not hold a separate evidentiary hearing on the motion to remove counsel, Mr. Smith and Mr. Rydelek responded to the State's accusations and attempted to answer the trial court's concerns. Mr. Pharr declared that only he had represented Mr. Parker, and he had a conflict of interest. It would make no sense to hold another hearing on the issue of the motion to remove counsel. They would not be able provide any additional information.
The State alleged no basis for requesting the removal of OIDP other than its claim that all the defense attorneys shared information about Mr. Parker and that the documents relating to Mr. Parker's prior guilty pleas could only have been found if Mr. Pharr had shared privileged information. However, Mr. Pharr and the OIDP attorneys satisfactorily explained how the information was discovered. The trial court articulated no clear basis for removing OIDP as counsel when its attorneys had established an attorney-client relationship and developed a bond of trust, especially necessary in a capital case. The court mentioned the "protection of the individual's rights" when it decided "out of [sic] abundance of caution" to remove "everyone operating on the defense." Like the attorneys in Davis v. Cain, 662 So.2d at 453, OIDP attorneys, Mr. Smith and Mr. Rydelek, have spent many hours reviewing, researching, and preparing for the trial and penalty phase. If they are removed, other attorneys will be compelled to spend that time to become familiar with the case. This is a capital case, and the defendant's relationship with his attorneys is crucial when he is fighting for his life. The defendant's arguments have merit and deserve to be carefully considered.
Griffin now argues that the trial court erred in denying the motion in limine because his testimony in the first trial was critically flawed in that a conflict of interest existed between him and his attorney. However, there is absolutely no evidence that a conflict between Griffin and his attorney flawed his testimony. Pharr did not even realize at the time of the first *40 trial that he had represented Parker in the earlier guilty pleas, and even if he had, it is difficult to understand how Pharr's knowledge of Parker's past in some way jeopardized his relationship with Griffin. After all, Parker was the State's witness, and Pharr's task was to attack his credibility.
Additionally, Griffin now argues that he had ineffective assistance of counsel in the first trial that led to his not being able to be properly represented in this trial. He argues that if Pharr had not allowed him to testify in the first trial, the State would not have had any statement by him to introduce in the second trial.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 So.2d 1030 (La.App. 4 Cir.1990); State v. Reed, 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4 Cir.1986); State v. Landry, 499 So.2d 1320 (La.App. 4 Cir.1986).
The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that he was prejudiced by the deficiency. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, supra, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra, 466 U.S. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992).
This Court has recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." State v. Bienemy, 483 So.2d 1105 (La.App. 4 Cir. 1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." State v. Brooks, 505 So.2d 714, 724 (La.1987).
Here, it was clearly a matter of trial strategy to allow Griffin to testify in the first trial. There was no option of raising an identification defense. The only option was to assert self-defense and attack the credibility of Parker, given his record, his involvement in drugs, his involvement in a drug transaction in this case, his being on parole at the time of the crime, and his being in jail at the time of trial. The record in fact supports a finding that self-defense was indeed an intelligent defense to raise. There is no evidence that counsel was deficient. In addition, there is no *41 evidence that Griffin was prejudiced given the strong case of the State, that is, a victim of the shooting, which Dedric Griffin had known for years, survived to tell the story.
Accordingly, for the reasons assigned, Dedric Griffin's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Defendant's name appears in the record as both "Dedrick" and "Dedric." For purposes of this appeal, we will use the name as it appears on the appellant brief.
[2] 2000-K-1158
[3] The docket master is silent on this issue.
[4] 2001-K-1137
[5] The docket master is silent as to the defendant's trial and sentence, and there are no minute entries for those dates. The information is gleaned from the transcript.
[6] "DD" is a nickname for Dedric Griffin.
[7] Shipe is Carter's nickname.
[8] Derrick's last name is not reflected in the record.