STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

04-1441

STATE OF LOUISIANA

VERSUS

MICHAEL DWAYNE COLLINS

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 60915
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

MARC T. AMY
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Marc T. Amy, Judges.

**CONVICTION AND SENTENCE AFFIRMED.**

**Thibodeaux, C.J., dissents in part with reasons.**

**Michael Harson**
**District Attorney**
**15th Judicial District Court**
**Post Office Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Frederick L. Welter**
**Assistance District Attorney**
**Post Office Box 288**
**Crowley, LA 70528**
**(337) 788-8831**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**William R. Campbell, Jr.**
**Louisiana Appellate Project**
**700 Camp Street**
**New Orleans, LA   70130**
**(504) 528-9500**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Michael Dwayne Collins**

**Karen G. Arena**
**Louisiana Appellate Project**
**110 Veterans Boulevard, Suite 222**
**Metairie, LA   70005-3054**
**(504) 828-6870**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Michael Dwayne Collins**

**Michael Dwayne Collins**
**South Louisiana Correctional Center**
**3483 Stagg Avenue**
**Basile, LA   70515-5501**

AMY, Judge.

The defendant was charged with aggravated rape. Following a jury trial, he was convicted of forcible rape, and sentenced to thirty years at hard labor without benefit of probation, parole, or suspension of sentence. The defendant appeals, alleging ineffective assistance of counsel and that his sentence is excessive. For the following reasons, we affirm.

## Factual and Procedural Background

The defendant, Michael Dwayne Collins, was charged by a bill of indictment on December 6, 2001 with aggravated rape, a violation of La.R.S. 14:42. At his arraignment on January 7, 2002, he entered a plea of not guilty.

The defendant filed two motions in limine on February 9, 2004. Regarding the first, the trial court prohibited the State from referring to any other charge or conviction related to the defendant, except those that qualified as res gestae or other sexual crimes. The defendant's other motion requested that an in camera inspection of the State's file for possible exculpatory evidence that the defendant believed had not been released. Following the inspection, the court ordered the State to provide the defendant with copies of the sexual assault examination performed by Dr. Duhon and any statements that had been made by the defendant and had not yet been given to him.

The defendant's trial began on April 27, 2004. The jury heard testimony from the victim, L.V.,[1] regarding the events that she alleged occurred on August 14, 2003. She testified that she had been in her apartment with her eight-month-old daughter taking a nap when she received a telephone call for the defendant, who lived in the apartment beside hers. She stated that she took the telephone next door and then

_____

[1] Pursuant to La.R.S. 46:1844(W), the victim's initials are used throughout for confidentiality purposes.

waited in her doorway while the defendant finished his telephone conversation near his own door. The defendant finished his conversation and gave her the telephone, she said, and she went back to resume her nap. L.V. stated that the defendant then knocked on her door, and when she went to her bedroom to get the telephone for him, she found that he had followed her into her bedroom. She testified that the defendant then attacked her, and began choking her. L.V. stated that she struggled to get away, but the defendant choked her again and then forced her to perform oral sex on him. She stated that the defendant then raped her on the same bed in which her daughter was napping. She said that he made her perform oral sex on him again and then he began to fall asleep. L.V. testified that, when she saw his eyes close, she fled the apartment, wearing only her underwear, and ran to the home of Steve and Loretta Tilton, who lived in another apartment in the complex. She also stated that she moved out of her apartment the next day and had sought counseling for about a year after the incident. On cross-examination, she said that the defendant had threatened to kill her during the attack, and that he slapped her face as well.

Mr. Tilton testified that L.V. had run into his house on August 14, 2003, wearing only her underwear and told him and his wife that the defendant had raped her. He stated that she was "distraught" and "scared out of her wits." A number of police officers and a crime lab technician testified for the State, as well as Dr. Duhon, the emergency room physician who treated the defendant.

Ms. Deanna Andrus, who lived in the apartment across from L.V. testified for the defense. Ms. Andrus stated that she had seen the defendant and L.V. outside, smoking cigarettes and talking on at least four occasions. She also testified that, the night before the alleged rape, she saw L.V. and the defendant enter the victim's apartment together.

2

The defendant testified on his own behalf, indicating that he had conversed with L.V. often and that she had invited him into her apartment on the night of August 14, 2003. He stated that the two had planned to have sex that evening, but did not because they were concerned that L.V.'s boyfriend would come home from work and find them. He stated that, on the afternoon of August 15, 2003, he had used L.V.'s telephone and then she invited him into her apartment. He said that she agreed to have sex with him, but asked him for money to buy milk and diapers for her daughter. He said that he placed thirty or thirty-five dollars on the dresser and then they had consensual sex and then he put his clothes on. He testified that she "put on her drawers[,]" and went into the kitchen and then into the bathroom. He said that he left while she was in the bathroom and walked home. On cross-examination, he stated that he was arrested lying down behind a bush in the backyard of his mother's house.

The jury found the defendant guilty of forcible rape and he was sentenced on July 19, 2004 to serve thirty years at hard labor without the benefit of probation, parole, or suspension of sentence. A Motion to Reconsider Sentence and a Motion for New Trial were filed and denied on July 21, 2004. The defendant appeals the verdict and the sentence, asserting the following as error:

> 1. Mr. Collins was denied his constitutional right to effective assistance of counsel when counsel failed to file a pre-trial motion to suppress the statement and request a pre-trial motion hearing, failed to thoroughly cross-examine the police officer on the defendant's ability to waive his rights, failed to object or move for a mistrial when the court opted not to play a promised tape for the jury that would resolve conflicting testimony between the defendant and the detective, or alternatively, allowed an insufficient instruction by the judge, and, finally, failed to make critical and obvious arguments to the jury.

> 2. The court erred when it imposed a constitutionally excessive sentence.

3

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are no errors which require correction.

*Ineffective Assistance of Counsel*

For his first assignment of error, the defendant asserts that he was denied his constitutional right to effective assistance of counsel for the specific reasons listed above.

> In *State v. Griffin*, 02-1703, pp. 8-10 (La.App. 4 Cir. 1/15/03), 838 So.2d 34, 40, our brethren of the Fourth Circuit, with whom we agree, reviewed the law applicable to claims of ineffective assistance of counsel stating as follows:
>
> > Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. *State v. Prudholm*, 446 So.2d 729 (La.1984); *State v. Johnson*, 557 So.2d 1030 (La.App. 4 Cir.1990); *State v. Reed*, 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. *State v. Seiss*, 428 So.2d 444 (La.1983); *State v. Ratcliff*, 416 So.2d 528 (La.1982); *State v. Garland*, 482 So.2d 133 (La.App. 4 Cir.1986); *State v. Landry*, 499 So.2d 1320 (La.App. 4 Cir.1986).
> >
> > The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Fuller*, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that he was prejudiced by the deficiency. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. *Strickland*, *supra*, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's

4

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland, supra*, 466 U.S. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. *State v. Sparrow*, 612 So.2d 191, 199 (La.App. 4 Cir.1992).

This Court has recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." *State v. Bienemy*, 483 So.2d 1105 (La.App. 4 Cir.1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." *State v. Brooks*, 505 So.2d 714, 724 (La.1987).

*State v. Schexnaider*, 03-144, pp. 17-18 (La.App. 3 Cir. 6/4/03), 852 So.2d 450, 462.

Motion to Suppress

Detective Richard Jones was called as a witness by the State in its case-in-chief. During his testimony, Detective Jones indicated that he asked the defendant if he raped L.V. and he said that he did not, but that the two had consensual sex. Defense counsel objected, arguing that a proper foundation had not been laid.

The jury was subsequently removed from the courtroom and the State was given an opportunity to lay a foundation with respect to the admissibility of any statement given by the defendant. The State proceeded to question Detective Jones. Defense counsel later objected to the introduction of the waiver of rights form arguing that the State failed to elicit any testimony as to whether the defendant had a right to refuse and whether any threats or promises had been made to the defendant. The State continued its questioning and when it was complete, defense counsel indicated that he had no questions for the detective. At that time, the trial court found that a foundation for the statement had been laid and the statement was given after a knowing and intelligent waiver of rights.

5

The jury was then brought back into the courtroom and Detective Jones' testimony continued. At that time, Detective Jones testified that the defendant stated that he and L.V. had sex and he left the apartment running. Detective Jones also testified that the defendant told him that he occasionally spoke with L.V. and that Ms. Andrus could verify that.

The defendant, however, testified that the intercourse was consensual and that, afterward, he put on his clothes and walked home. He disputed the detective's testimony that he had previously said that he left the apartment running and said this could be verified by playing his taped statement.

Detective Jones was again called by the State on rebuttal. During his testimony, the State moved to introduce the defendant's taped statement. Defense counsel objected, arguing that the tape should have been introduced in the State's case-in-chief. After a bench conference, the trial court ruled that the jury would be able to hear those portions of the taped statement that the State believed rebutted the testimony of the defendant or any other witness called by the defense.

The trial court listened to the tape out of the presence of the jury and made the following remarks regarding the tape:

> I am uncertain as to what critical portions of the statement actually say and cannot confirm in my own mind that the transcription is accurate.
>
> Now, I propose under the circumstances to inform the jury of just those facts and also inform the jury that they are to place no weight or significance on the fact that this is the situation and are to give no weight one way or another and not to presume in any way what the tape would say if it were determined.

Defense counsel agreed with the trial court's decision. The jury returned to the courtroom and the trial court stated the following:

> But I have listened to this tape with the equipment that's available in the courtroom a number of times and . . . I am unsure about some portions of the statement and whether or not they can be understood. I'm having

6

problems and have had problems understanding it. Under those circumstances it would be improper for me to play it for you or to provide you with a written transcription of that tape because the transcription may not be accurate. Without further evidence of the accuracy of the transcription, it would be improper for me to allow you to hear it or to read the words transcribed.

Now, having said that, I am going to admonish you that you are to place no significance whatsoever on those facts or the fact that you are not going to get to hear portions of the recorded statement. It is not to suggest that I believe that the State's position is the correct one, or that the defendant's position is the correct one. You are to place no significance whatsoever on the fact that you cannot hear it because of these technical problems.

The defendant asserts that defense counsel failed to file a pre-trial motion to suppress his statement and that, had such a motion been filed, the "specter of the unplayable tape . . . would never have been before the jury." The defendant suggests that because the mid-trial hearing regarding the tape was not held until after the police officer had mentioned the statement, "the specter of the known tape erred to the State's benefit, notwithstanding the fact that the tape may have supported the defendant's credibility." Furthermore, the defendant points out in his appellate brief that the jury was never instructed to disregard the existence of the tape. The defendant argues that defense counsel should have either insisted that the tape be played to the jury, or requested an instruction to disregard the fact that the tape existed.

Our review of the record indicates that the testimony of Detective Jones and the defendant are largely consistent, other than the defendant's assertion that he did not tell Detective Jones that he left the apartment running. Based on the congruence of the statements of Detective Jones and the defendant, defense counsel's failure to file a motion to suppress may have been a trial strategy which cannot be fully reviewed on the available record. Therefore, review of this issue should be relegated to post-conviction relief.

7

Failure to Cross-Examine Detective Jones

The defendant alleges in his appellate brief that defense counsel was ineffective for failing to cross-examine Detective Jones in any manner as to the admissibility of the defendant's statements, particularly, Detective Jones' conclusion that the defendant understood the rights he was giving up. The defendant asserts that there is nothing in the record to indicate that he "was reasonably educated, could read or write, or had any reason to believe that the defendant was doing anything more than giving 'lip service' to a question posed by a police officer." The defendant argues that if the detective had been cross-examined on those issues, his credibility may have been compromised and the statement may have been excluded entirely.

Again, we find the similarity between the testimony of Detective Jones and the defendant of import in analyzing the defendant's argument on appeal. Because their testimony was similar in many respects, the defense counsel's failure to cross-examine Detective Jones regarding the defendant's ability to understand his rights may have been a trial strategy. Accordingly, this issue would be more properly addressed in an application for post-conviction relief.

Mistrial

The defendant also asserts that his defense counsel erred in not moving for a mistrial when the court did not play the taped statement, leaving the "specter of the tape hanging over the jury's head." The defendant again suggests that counsel should have either requested an instruction that the jury disregard the tape's existence at all, or should have insisted that the tape be played despite its insufficiency so that the jury could form its own conclusions. The defendant avers that had defense counsel done any of the above, the "credibility balance would have tipped for the defense."

8

At trial, defense counsel agreed with the trial court's decision to instruct the jury to place "no significance . . . on the fact that you are not going to get to hear portions of the recorded statement." Defense counsel's acquiescence to this instruction, instead of requesting an additional instruction or a mistrial, may have been a part of counsel's trial strategy, which should be addressed in an application for post-conviction relief.

Mischaracterization of Testimony and Failure to Make Arguments

The defendant contends that trial counsel was ineffective during closing arguments because he failed to object to "a significant mis-characterization [sic]" of Detective Jones' testimony by the State. The defendant further alleges that defense counsel failed to make "obvious and critical arguments[.]" The defendant argues that had defense counsel done so, his "credibility would have been boosted, the victim's credibility would have been destroyed, and a jury which . . . has already reduced [his] charge to forcible rape, would surely have found him not guilty."

The defendant specifically asserts that defense counsel should have objected when the State argued in its closing statement, "You heard Detective Jones testify that when he took a statement from the defendant, [the defendant] said, '[L.V.] left in just her underwear.' He called it her drawers." The defendant contends that Detective Jones never testified to such a statement, and that his own testimony was that L.V. left the bedroom and went into the kitchen and then the bathroom in her underwear.

The State did make the comment alleged by the defendant during its closing argument and, after a thorough review of the record, we can find no place in the record where Detective Jones testified as quoted above. However, the defendant himself testified that his statement to the detective was similar to the comment above.

Q    Now, you testified here today that she [L.V.] was in the
        bathroom when you left. Right?

A    Yes, Sir.

Q    Do you remember giving a statement to the Crowley Police Department –

A    Yes, Sir.

Q    – the day of the incident?

A    Yes, Sir.

Q    Do you remember Detective Jones asking you what happened after you had sex?

A    Yes, Sir.

Q    Do you remember stating, "She put on her drawers and left. Then I put on my clothes and walked out the house home."

A    Yes, Sir.

It is of no significance that the State incorrectly stated that Detective Jones said that the defendant made the comments in his taped statement, since the defendant actually testified that he made the comments, which could be construed as fully consistent with the State's argument, during his taped statement. Accordingly, this mischaracterization by the State did not unfairly prejudice the defendant.

The defendant also argues that the defense counsel failed to highlight to the jury two points that would have called the victim's credibility into question. First, the defendant asserts that L.V. testified as to only one act of oral sex, but told medical personnel that there were three. Second, defense counsel never addressed the fact that L.V. testified that she knew the defendant only in passing, yet she received calls for the defendant at her home. The defendant contends that, due to the importance of credibility determinations in this case, the failure to raise these arguments led to a "tragic result."

10

Our review of the victim's testimony indicates that she stated that the defendant forced her to perform oral sex on him twice. Dr. Neal Duhon, the emergency room physician who treated L.V., testified that L.V. told him that she had performed oral sex on the defendant three times. During his closing statement, defense counsel pointed out that L.V. testified that the defendant made her perform oral sex on him and that the defendant denied that any oral sex had occurred. He also reviewed the results of the medical examination, noting for the jury that the oral samples taken from the victim suggested that she had not engaged in oral sex with the defendant.

Considering the defendant's relationship to the victim before the incident, L.V. testified that she knew who the defendant was because his girlfriend lived next door to her. She also testified that she never visited with the defendant and that the two only said "hi" and "bye" to each other in passing. During closing arguments, defense counsel pointed out the following:

> I think the defendant has sufficiently shown that there are some inconsistencies with [L.V.'s] rendition of what happened that you need to take cognizance of. First, the testimony concerning the relationship or lack thereof between [L.V.] and Mr. Collins. [L.V.] said that they only spoke – I think it was only two or three occasions. I'm not quite sure about the number, and I do remember the phrase, "Nothing other than to say hi and bye.

He went on to review Ms. Andrus' testimony that she had seen the defendant and L.V. smoking outside together on several occasions and go into L.V.'s house together the night before the alleged rape.

The defendant's argument on appeal is that "trial counsel failed to highlight" these particular issues for the jury, although our review of the record indicates that trial counsel referenced the issues in his closing statement and solicited testimony regarding the issues during the course of the trial. Defense counsel questioned L.V.'s credibility during closing arguments and brought attention to the suggested

11

relationship between she and the defendant. The jury heard all of the testimony during the trial and the information set out by the defendant was available to the jury when it made any credibility determinations in this matter. Thus, the defendant has not proven that defense counsel's performance was deficient regarding this issue.

*Excessive Sentence*

In his second assignment of error, the defendant contends that the trial court erred when it imposed a constitutionally excessive sentence. He asserts that the trial court offered no specific reasons for the "unduly harsh" sentence, particularly in a case where the victim's credibility was "obviously" a concern for the jury. The defendant also asserts that the trial court failed to use the criteria set out in La.Code Crim.P. art. 894.1 and only made general references to the facts it considered.

The defendant filed a Motion to Reconsider Sentence alleging that his sentence was excessive. None of the grounds asserted by the defendant on appeal were set forth in his Motion to Reconsider Sentence. "Failure to . . . include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review." La.Code Crim.P. art. 881.1(E). Accordingly, this court is relegated to a bare claim of excessiveness in this case. *State v. Whatley*, 03-1275 (La.App. 3 Cir. 3/3/04), 867 So.2d 955.

This court has set forth the following standard to be used in reviewing excessive sentence claims:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless

12

imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied,* 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996).

*State v. Barling*, 00-1241, 01-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331.

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

The defendant was convicted of forcible rape, in violation of La.R.S. 14:42.1. Louisiana Revised Statutes14:42.1(B) states, "[w]hoever commits the crime of forcible rape shall be imprisoned at hard labor for not less than five nor more than forty years. At least two years of the sentence imposed shall be without benefit of probation, parole, or suspension of sentence." The Defendant received a sentence of thirty years at hard labor, without benefit of probation, parole or suspension of sentence.

At the sentencing hearing, the trial court stated the following:

> Mr. Collins, I have reviewed the pre-sentence report which has been completed by the Department of Corrections. I have reviewed the aggravated and mitigating circumstances listed in the appropriate Articles of the Code of Criminal Procedure. I have considered the factors involved in this case, so you know I presided over the trial where you were found guilty. I have considered the requests of the victim in this trial. And after review of all that I have seen, Sir, I sentence you to serve thirty years at hard labor. That sentence is to be served without benefit of probation, parole, or suspension of sentence.

The trial court has wide discretion in imposing a sentence within statutory limits. *State v. deBeche*, 01-1083 (La.App. 3 Cir. 2/6/02), 815 So.2d 1028, *writ denied*, 02-686 (La. 9/13/02), 824 So.2d 1187. It is evident from the language above that the trial judge, who had presided over the defendant's trial, considered a number of factors in determining the defendant's sentence. The trial court heard the victim's testimony that the defendant had used physical force and threats to rape her and force her to perform oral sex on him in her home while her daughter slept a few feet away. Based on the conflicting testimony of the victim and the defendant, the jury accepted the victim's account in assessing whether the encounter was consensual, and the trial court considered the same evidence in determining the defendant's sentence.

While the sentence is at the higher end of the sentencing range for forcible rape, we do not find that the sentence shocks our sense of justice or that the punishment is grossly disproportionate to the severity of the crime committed. The sentence imposed upon the defendant was within the statutory sentencing range for forcible rape and we find no manifest abuse of the trial court's discretion in imposing this particular sentence. This assignment is without merit.

**DECREE**

For the foregoing reasons, Michael Dwayne Collins' conviction and sentence to serve thirty years at hard labor without benefit of parole, probation or suspension of sentence are affirmed.

**CONVICTION AND SENTENCE AFFIRMED.**

**STATE OF LOUISIANA**

**VERSUS**

**MICHAEL DWAYNE COLLINS**

THIBODEAUX, C.J., dissenting.

I dissent from the imposition of a thirty-year sentence at hard labor without the benefit of probation, parole, or suspension of sentence. While I recognize the abuse of discretion standard, the trial judge did not articulate which aggravating and mitigating circumstances were considered nor did he articulate the factors which he considered. Further, a sentence which is 75% of the maximum forty-year term serves no meaningful penal goal.

For the foregoing reasons, I respectfully dissent.