# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**09-392**


STATE OF LOUISIANA

VERSUS

M. L. JR.


********** 

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 07-K-0094-B
HONORABLE ELLIS J. DAIGLE, DISTRICT JUDGE

**********

**JOHN D. SAUNDERS**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, John D. Saunders, and Shannon J. Gremillion (S), Judges.

**AFFIRMED AND AMENDED.**

**Cooks, J., dissents and assigns written reasons.**


**Earl B. Taylor**
**District Attorney, 27th J.D.C.**
**P. O. Drawer 1968**
**Opelousas, LA 70571-1968**
**(337) 948-3041**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**Counsel for Defendant/Appellant:**
**M. L. Jr.**

**Jennifer Ardoin**
**Assistant District Attorney**
**P. O. Drawer 1968**
**Opelousas, LA 70571**
**(337) 948-0551**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**SAUNDERS, Judge**.

The Defendant, M.L., Jr., appeals his conviction and sentence of indecent behavior with a juvenile. For the following reasons, we affirm his conviction and modify the sentence.

**FACTS AND PROCEDURAL HISTORY:**

Defendant married the victim's mother, B. L., in 1998, when the victim was three months old. On a Saturday in October 2006, B.L. and her friend, J.S., went shopping, and the victim stayed home with Defendant. When the two women returned to the Port Barre residence, they were able to see Defendant sitting in his office with the victim, S.M., in his lap. The front door had clear glass in it.

B.L. and J.S. could see that Defendant and the victim were watching the computer screen, which appeared to depict a naked couple having sex. As B.L. opened the front door, Defendant shoved the victim off his lap, and switched to a video-clip of a game of pool.

B.L. testified she was also concerned because on another occasion, she saw the victim putting two Barbie dolls into a sexual position. She voiced her concerns to J.S., and the two women decided to have one of J.S.'s teenage sons, Robert, talk to the victim. As a result of a conversation with Robert, the victim reported to B.L. that Defendant had touched her "down in her private areas." B.L. then reported the matter to police.

On February 27, 2007, a St. Landry Parish grand jury indicted Defendant for aggravated incest, a violation of La.R.S. 14:78.1. Prior to trial, Defendant filed a motion to compel the disclosure of a confidential informant's identity. Said motion was denied after a hearing, and he sought review by this court. On February 6, 2008, this court denied relief in an opinion bearing docket number 07-1476.

After other pre-trial activity, the parties selected a trial jury on June 4, 2008. The jury began hearing evidence on August 21, 2008 and concluded the next day. On November 13, 2008, the trial court sentenced Defendant to four years at hard labor, the first two without benefit of parole, probation, or suspension of sentence.

Defendant now appeals his conviction and assigns seven errors. For the following reasons, we affirm the conviction.

**ASSIGNMENTS OF ERROR:**

1. The evidence introduced at the trial of this case was insufficient to prove the necessary elements of either the greater offense of aggravated incest or the responsive charge of indecent behavior of a juvenile returned in this case.

2. The trial court erred in granting the State's oral Motion in Limine with regard to the testimony at the hearing on the Motion to Compel the Disclosure of the Confidential Informant and more specifically at the trial concerning any subsequent investigation conducted by Chief Richard or Assistant Chief Jordan.

3. The trial court erred in denying the Motion for the District Attorney of St. Landry Parish to be Issued a Subpoena Under La. C.E. Art. 507 and be Required to Testify.

4. The trial court erred in concluding that S.M. was competent to testify at the trial of this case.

5. The trial court erred in concluding that the quantity of pornographic material seized from the home was relevant and thus erred in allowing the State to question its expert regarding the quantity, especially in light of a joint stipulation limiting this type of testimony.

6. Trial counsel rendered ineffective assistance when he failed to move for a mistrial and in failing to object to the insufficiency of the charge to the jury.

7. The record contains errors obvious on the record:

   a. The trial court erred in failing to personally advise Appellant of the Sex Offender Registration requirements.

   b. The minutes of court of the trial incorrectly reflect that the

verdict of the jury was unanimous.

  c.  The minutes of court of the sentencing: 1) incorrectly reflect an order issued by the court restricting certain persons from working as an informant, and 2) fail to contain any mention regarding the court's comments regarding registering as a sex offender.

## LAW AND DISCUSSION ON THE MERITS:

<u>Assignment of Error No. 1</u>

In his first assignment of error, Defendant argues the evidence adduced at trial was insufficient to support the conviction. The analysis for such claims is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the Jackson standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Defendant was convicted of "indecent behavior with a juvenile" pursuant to La.R.S. 14:81, which at the time of the offense stated, in pertinent part:

> A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
>
> > (1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where

-3-

there is an age difference of greater than two years between the two persons. Lack of knowledge of the child's age shall not be a defense; or

  (2) The transmission of an electronic textual communication or an electronic visual communication depicting lewd or lascivious conduct, text, or images to any person reasonably believed to be under the age of seventeen and reasonably believed to be at least two years younger than the offender. It shall not be a defense that the person who actually receives the transmission is not under the age of seventeen.

. . . .

  C. For purposes of this Section, the following words have the following meanings:

  (1) "Electronic textual communication" means a textual communication made through the use of a computer on-line service, Internet service, or any other means of electronic communication, including but not limited to a local bulletin board service, Internet chat room, electronic mail, or on-line messaging service.

  (2) "Electronic visual communication" means the communication of a visual image made through the use of a computer on-line service, Internet service, or any other means of electronic communication, including but not limited to a local bulletin board service, Internet chat room, electronic mail, or on-line messaging service.

On appeal, Defendant argues the testimonies of three key witnesses were so riddled with inconsistencies as to be not credible. He also argues that Defendant's act of viewing images on his home computer with the victim did not satisfy the elements of La.R.S. 14:81.

Having alleged a number of such inconsistencies or ambiguities in his brief, Defendant concludes, "[t]here was insufficient evidence to support the State's theory that a sexual battery occurred in the bathroom; thus, the jury was correct in rejecting this theory."

It appears that the jury rendered a compromise verdict in this case and did not necessarily reject the State's theory that Defendant inappropriately touched the victim. He was originally charged with aggravated incest, pursuant to La.R.S. 14: 78.1, which states, in pertinent part:

A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.

B. The following are prohibited acts under this Section:

(1) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, *indecent behavior with juveniles*, pornography involving juveniles, molestation of a juvenile, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.

(2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.

(Emphasis added).

We cited La.R.S. 14:81 earlier, and note that evidence conforming to either paragraph of that statute could have proven indecent behavior with a juvenile, so as to form an element of aggravated incest. La.R.S. 14:78.1(B)(1). Therefore, the jury's apparent verdict did not necessarily reject the State's premise that Defendant improperly touched the victim.

This court has previously discussed compromise verdicts. For example, in the context of a defendant charged with second degree murder but convicted of manslaughter, this court explained:

Defendant offered no evidence sufficient to support the mitigating circumstances of sudden passion or heat of blood. Thus, there was insufficient evidence for the jury to return the responsive verdict of attempted manslaughter. However, the verdict of attempted manslaughter may have reflected the jury's right to compromise between the verdicts of guilty of attempted second degree murder and not guilty. In *State ex rel. Elaire v. Blackburn*, 424 So.2d 246 (La.1982), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983), the court held that compromise verdicts are permissible, so long as the evidence supports either the verdict given or the original charge.

There was sufficient evidence for the trier of fact to have found that the State proved beyond a reasonable doubt all the elements necessary to support the charge of attempted second degree murder; therefore, a responsive verdict of attempted manslaughter was proper.

Defendant's specific intent may be inferred from the circumstances. *State v. Tilley*, 99-0569 (La. 7/6/00); 767 So.2d 6.

*State v. Charles,* 00-1611, pp. 4-5 (La.App. 3 Cir. 5/9/01), 787 So.2d 516, 519-20, *writ denied*, 01-1554 (La. 4/19/02), 813 So.2d 420.

Viewing the evidence in the light most favorable to the prosecution, we find that the evidence was sufficient to support both the verdict reached and the charged offense. Pursuant to La.R.S. 14:81(A)(1), the State had to prove that Defendant performed a "lewd and lascivious act" upon the person of the victim. The jurisprudence has defined such an act as follows: "As noted in *State v. Rollins*, 581 So.2d 379, 382 (La.App. 4 Cir.1991), 'A lewd or lascivious act is one which tends to excite lust and to deprave the morals with respect to sexual relations and which is obscene, indecent, and related to sexual impurity or incontinence carried on in a wanton manner. *State v. Holstead*, 354 So.2d 493 (La.1977); *State v. Prejean*, 216 La. 1072, 45 So.2d 627 (1950).' " *State v. Cloud*, 06-877, p. 9 (La.App. 3 Cir. 12/13/06), 946 So.2d 265, 272, *writ denied*, 07-86 (La. 9/21/07), 964 So.2d 331.

At trial, the victim testified that Defendant touched her on "the wrong spot." When asked to clarify, she pointed to her genital region. Although the incident

-6-

occurred in a bathroom, she explained that when she was a small child, her mother would help her bathe, but Defendant did not. Her videotaped interview suggested that Defendant was helping her shampoo at the time of the incident. However, after the tape was played in open court, she reiterated that Defendant was not helping her shampoo when he entered that bathroom and touched her genital area.

The victim's testimony showed that Defendant touched her genital area when she was naked and that he was not in any way helping her bathe when he did so. The credibility assessment of her testimony, in comparison to her videotaped interview, was within the jury's purview. The jury could have reasonably inferred that in this situation, Defendant's actions were taken to gratify himself sexually. This conclusion is reasonable, since the jury had heard testimony that Defendant, a grown man, had touched the minor victim on her genitals while she was naked, and at another time had watched pornography with the little girl sitting on his lap.

We find that while the victim's testimony and demeanor may have indicated she was having difficulty staying focused on the proceedings, her testimony did not indicate that she was unable to properly perceive the relevant events at the times they occurred. Thus, her courtroom behavior does not provide a basis for this court to second-guess the jury's credibility assessment.

We find that Defendant has failed to show a basis for this court to second-guess the jury's credibility assessment. Accepting said assessment, and otherwise viewing the evidence in the light most favorable to the State, we find that the record would have supported a conviction for the charged offense. The compromise verdict was valid. Thus, the assignment lacks merit.

Defendant combines these assignments in brief. He complains the trial court improperly limited the testimony of then-acting Chief Cindy Jordan of the Port Barre Police Department, both for the pre-trial hearing on his Motion to Compel the Disclosure of the Confidential Informant, and for trial. Defendant complains the trial court also erred by refusing to issue a subpoena for the district attorney to testify.

Defendant argues that the Port Barre Police Department's investigation of the case was "botched," thus subjecting the department to possible civil litigation. He further argues that such potential liability renders the late chief's statement regarding the confidential informant as one against interest. However, he cites no authority for this argument and does not even attempt to demonstrate that civil liability attached. It is unclear how the existence of such a confidential informant, or the information said informant allegedly obtained, would have subjected the police department to civil liability. Further, the record does not demonstrate that Chief Richard made the statement pursuant to knowledge or apprehension of any such liability. Therefore, we find that this argument lacks merit.

Defendant also argues that since the information was exculpatory, the State had a duty to immediately obtain the tape that allegedly existed, then turn it over to him. He cites no legal authority for the premise that immediate action was required, and our research has found none. The record shows that Defendant's trial counsel became aware of the alleged informant and tape when the district attorney did, and Chief Jordan was unable to learn the informant's identity, or to find any materials that supported the information Chief Richard had conveyed at the meeting with the State and Defense. There is no showing that the State withheld or hid exculpatory

information from Defendant. Therefore, this argument lacks merit.

Assignment of Error No. 4

In his fourth assignment of error, Defendant argues the victim should not have been allowed to testify; he alleges she was incompetent. Although he now claims that his trial counsel objected on this issue, the State points out that no such objection was lodged. Our review of the record indicates that the State is correct.

The record does not contain an objection regarding the victim's competence to testify. Thus, this issue was not preserved for review pursuant to the "contemporaneous objection rule" codified by La.Code Crim.P. art. 841. The State notes this court's language in an earlier case:

> In order to preserve an issue for appeal, a party must make a contemporaneous objection. Louisiana Code of Criminal Procedure Article 841(A) provides, in part, that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." Louisiana courts have consistently recognized this as the contemporaneous objection rule, noting its dual purposes: "(1) to put the trial judge on notice of the alleged irregularity so that he may cure the problem and (2) to prevent a defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by objection." *State v. Potter*, 591 So.2d 1166, 1169, n. 6 (La.1991), *writ denied*, 619 So.2d 574 (La.6/18/93) (*quoting State v. Thomas*, 427 So.2d 428, 432 (La.1982)). *See also State v. Bias*, 95-541 (La.App. 3 Cir. 1/31/96), 674 So.2d 265; *State v. Stracener*, 94-998 (La.App. 3 Cir. 3/1/95), 651 So.2d 463, *writ denied*, 97-0696 (La.11/7/97), 703 So.2d 1261.

*State v. Dossman*, 06-449, pp. 14-15 (La.App. 3 Cir. 9/27/06), 940 So.2d 876, 885, *writ denied*, 06-2683 (La. 6/1/07), 957 So.2d 174.

In the absence of a contemporaneous objection, this assignment was not preserved for review. This assignment of error lacks merit.

Assignment of Error No. 5

In this assignment of error, Defendant argues that the trial court erred in finding

that the amount of pornography found in his home was an admissible fact in the present case. He refers to a stipulation the parties made at a hearing on June 18, 2008, and the State quotes it:

> **MR. ROY RICHARD:** We hereby stipulate to the following: "The State and any and all witnesses called on behalf of the State of Louisiana will refrain from any mention of quantity and/or title of legal pornographic tapes, DVDs and/or images from computers found on the premises of [M.] [L.] at the execution of the search warrants in this matter, unless the Court determines it becomes relevant. The State does not agree that every image is legal, but will not refer to them as legal or illegal during this trial on the merits."
>
> **THE COURT:** Is that correct with the State?
>
> **MR. DONALD RICHARD:** That is the State's stipulation, Judge.

Subsequently, the court made a finding regarding relevance, during the State's re-direct examination of computer expert Thomas Fergerson. The court determined that questions regarding the volume of pornography on Defendant's computer, relative to whether the volume could affect the likelihood of the pornography being fabricated, were relevant and, thus, did not violate the earlier stipulation. This finding was based on earlier arguments made by the Defendant, where it was suggested that the pornographic images found on Defendant's computer could possibly have been added to the computer in an effort to frame Defendant. The court found that this argument opened the door for the State to address the volume of that pornography. We agree.

We find that the quantity of pornography found in Defendant's residence was relevant to the issue discussed—whether fabrication was likely. Based on quantity, the witness was able to testify that fabrication was unlikely. The State brought up the fabrication issue, in an attempt to negate it, during its direct examination of

-10-

Fergerson. The general matter of Defendant's possession of pornography was relevant to the case, since the State alleged he had watched pornography with the victim on his lap. Accordingly, we find no merit in this assignment of error.

Assignment of Error No. 6

In his sixth assignment of error, Defendant argues that his trial counsel was ineffective for failing to move for a mistrial when the court allowed the victim to sing a song in court, after her testimony. He also argues that counsel was ineffective for failing to object to the court's renewed charge to the jury, when it had difficulty reaching a verdict. Finally, he argues trial counsel was ineffective for failing to object to the initial jury instruction, which he contends did not fully inform the jury regarding its ability to assess credibility.

This court has previously explained the analysis for ineffective assistance of counsel claims:

> In *State v. Griffin*, 02-1703, pp. 8-10 (La.App. 4 Cir. 1/15/03), 838 So.2d 34, 40, our brethren of the Fourth Circuit, with whom we agree, reviewed the law applicable to claims of ineffective assistance of counsel stating as follows:

> > Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. *State v. Prudholm*, 446 So.2d 729 (La.1984); *State v. Johnson*, 557 So.2d 1030 (La.App. 4 Cir.1990); *State v. Reed*, 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. *State v. Seiss*, 428 So.2d 444 (La.1983); *State v. Ratcliff*, 416 So.2d 528 (La.1982); *State v. Garland*, 482 So.2d 133 (La.App. 4 Cir.1986); *State v. Landry*, 499 So.2d 1320 (La.App. 4 Cir.1986).

> > The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d

-11-

674 (1984); *State v. Fuller*, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that he was prejudiced by the deficiency. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. *Strickland, supra*, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland, supra*, 466 U.S. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. *State v. Sparrow*, 612 So.2d 191, 199 (La.App. 4 Cir.1992).

This Court has recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." *State v. Bienemy*, 483 So.2d 1105 (La.App. 4 Cir.1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." *State v. Brooks*, 505 So.2d 714, 724 (La.1987).

*State v. Schexnaider*, 03-144, pp. 17-18 (La.App. 3 Cir. 6/4/03) 852 So.2d 450, 462.

When the victim was excused from the witness stand, she asked to sing a song, and the court allowed it. She sang one line, and people applauded. There is no showing that the victim's singing elicited undue sympathy from the jury. In the context of the ineffective assistance of counsel claim, the State suggests that Defense counsel could well have made a tactical decision not to object. Viewed alongside her other actions while on the stand (e.g., asking for a bite of her sandwich, stating she forgot the proceedings before lunch), trial counsel may have viewed her singing as an indication that she was distracted, or did not understand the proceedings. He may

well have hoped the jurors would have the same impression. As there is a reasonable possibility that trial counsel made a strategic decision not to object, this issue should be deferred to the post-conviction relief process.

As for the renewed charge to the jury, we observe that the jury initially retired to deliberate at 6:48 p.m. At 7:53 p.m., it sent in a request to review the videotape of the victim's interview at Stuller Place, which the court refused. At 8:35 p.m., the jury reported it was having difficulty reaching a decision. The court sent the jury back to deliberations, with a reminder that a valid verdict required at least ten jurors.

At 10:28 p.m., the jury returned to report that it was still having difficulty reaching a verdict. In the course of re-instructing the jury, the court stated:

> **THE COURT:** Still no verdict. All right, ladies and gentlemen, let me read something to you at [this] time. As you know, this is an important case, and all cases are important. If you fail to agree on a verdict, the case i[s] left open and undecided. Like all cases, it has to be disposed of sooner or later. There does not appear to be any reason to believe that this case can be tried again better, or more exhaustively, than it has been before you today and yesterday. Any future jury must be selected in the same manner and from the same sources as you have been chosen. So there appears no reason to believe that the case would ever be submitted to twelve men or women for that matter more intelligent, more impartial, or more competent to decide it, or that clearer evidence could be produced on behalf of either side.
>
> It is unnecessary to add, members of the jury, that this Court does not wish any juror to surrender his conscientious convictions. As stated in the instructions given at the time the case was submitted to you, do not surrender your honest convictions as to the weight or effect of evidence solely because of the opinion of the other jurors, or for the mere purpose of returning a verdict. However, I wish to repeat that it is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to your independent judgment. Each of you must decide the case for yourself, but you should do this only after consideration of the evidence with your fellow jurors.
>
> This is a time when a lot of patience is required, when a lot of understanding is required, and please don't get mad at each other; nobody else is mad at you, so why should you get mad at each other?

Just be as patient with each other as you possibly can. Remember, that this is a very serious matter. We are going to abide by your decision, whatever it may be. You've been deliberating now for approximately three hours. If you cannot decide it, we will all accept that, but we would all be very grateful to you if you could reach a decision in this matter. So what I'm going to do at this time is I'm going to ask that you try once more. I'm also going to send some food to you. Do all of you eat hamburgers, and french fries, and coke? Anybody does not eat that?

**(No show of hands.)**

**THE COURT:** Okay, what I'm going to do is I'm going to order food for you and I'm going to send it down, but as I stated, we would certainly appreciate it if you would go down and attempt to render a verdict in this matter. There have been deliberations for much longer periods of time than what you've been down there, and I know it's getting late into the night. It's ten o'clock, right at ten-thirty, I'm sorry, but I'm going to ask you to go down and give it one last attempt in accordance with the instructions that I've just given you. I wish you all would all think about those instructions, think about the instructions that I gave you previously, think about the law and the evidence, and try and make one more attempt to render a verdict in this matter. Thank you. Please follow the bailiff and we'll get your food down there in a very short period of time.

**(At which time the jury is escorted to the deliberation room to continue deliberations.)**

**THE COURT:** Court is at recess.

**(It is now 11:56 p.m. and the jury has notified the Court that it has reached a verdict.)**

**THE COURT:** Let the record reflect that the defendant and his attorney, Mr. Roy Richard, are present, that the State is present through its prosecutors, Mr. Donald Richard and Ms. Jennifer Ardoin. The jury is all accounted for and seated. Ladies and gentlemen of the jury, have you reached a verdict?

**JURY FOREPERSON:** Yes, we have, Your Honor.

This court has previously discussed such a jury charge in the context of a

*Strickland* claim:

While most ineffective assistance claims are more properly addressed in the post-conviction relief process, Defendant is correct in asserting that the current record is sufficient to assess the assignment.

-14-

This court has discussed *Allen* charges as follows:

> In [*State v.*] *Nicholson*, 315 So.2d 639 [ (La.1975) ], the supreme court set limits to the instructions that a trial judge can give to a jury after the jury announces it cannot reach a verdict. In *Nicholson*, the court held when a trial court gives a deadlocked jury an instruction that rises to the level of being an "*Allen* charge" or any "coercive modification" of an *Allen* charge, the trial court has committed reversible error. The *Allen* charge originated in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), where the United States Supreme Court approved a charge designed to break a jury deadlock and accomplish jury unanimity. One characteristic of an *Allen* charge is an admonition to the jurors in the minority to reconsider their opinion in favor of the majority in order to reach a decision. *State v. Schamburge*, 344 So.2d 997 (La.1977); *State v. Washington*, 93-2221 (La.App. 1 Cir. 11/10/94); 646 So.2d 448; *State v. Caston*, 561 So.2d 941 (La.App. 2 Cir.1990); *State v. Campbell*, 606 So.2d 38 (La.App. 4 Cir.1992). A second characteristic is the trial court implying to the jury that it must reach a decision because the trial court will not accept a mistrial. *Id.*

> The Louisiana Supreme Court has banned the use of *Allen* charges and "modified" *Allen* charges to ensure that juror verdicts are not the product of coercion. *Schamburge*, 344 So.2d 997; *Nicholson*, 315 So.2d 639. "When the duty to reach a verdict is coupled with the trial court's admonition that those in the minority should reconsider their position, there exists an almost overwhelming pressure to conform to the majority's view." *Washington*, 646 So.2d at 454-455.

*State v. James*, 96-472, pp. 3-4 (La.App. 3 Cir. 12/11/96), 687 So.2d 485, 487, *writ denied*, 97-0069 (La. 5/16/97), 693 So.2d 796.

In the present case, the following colloquy is at issue:

**THE COURT:**

> All right, Ladies and Gentlemen, as you are aware there's been another note that we have received. The question says, "our options?" Is there a hung jury (or mistrial) or not guilty? Because there's no space for hung jury. Is it the same? Signed Richard A. Hilton.

> Anything from the State? I think if he's asking--if

I had to read it I think he's asking indicating that they may be at some type of impasse to be quite candid. But then there's a question as to is there something on the form that they should fill out if that's the situation.

. . . .

**THE COURT:**

Ladies and Gentlemen, I've reviewed the note that's been presented to the Court. At this time I would like to make an additional instruction just as an attempt to see if we can get the matter resolved. I want you--I have this additional instruction for you to consider and to act on. I want you to realize that this is an important case and I am going to send you back into the deliberation room for another 30 minutes. I am going to try and urge you to come to some kind of agreement.

Do not, however, surrender your individual opinions just to reach a verdict. But do consider the other jurors views whether you're in the minority or in the majority with regard to the issue that you're considering. Please consider each other's views and weigh it against your own conclusions. And I am going to ask that you go back for 30 more minutes and attempt to deliberate to see if we can reach an--reach this impasse. All right. If you'll go back with the Bailiff.

**[JURY EXITS COURTROOM]**

. . . .

As the State notes in its brief, the scenario in *James* was similar to the one in the present case. The *James* court noted:

> [T]he jury announced it was not able to reach a verdict after three hours of deliberation. When the trial court asked the jury foreman if he thought the jury would be able to reach a verdict with additional deliberation, the foreman answered, "At this time, no, your Honor." The trial court then ordered the jury taken out and recessed court for fifteen minutes to research case law concerning instructions a trial judge can give to a jury when the jury announces it cannot reach a

verdict. After the recess, the trial court gave the following instruction to the jury:

> All right. I have this additional instruction for you to consider and act on. This is an important case, and I'm going to return you to deliberate for thirty more minutes and urge you to come to an agreement. Do not, however, surrender your individual opinions just to reach a verdict, but do consider the other juror's views whether you're in the minority or in the majority, consider the other's views and weigh it against your own conclusions, and I'll have the jury return to further deliberate for thirty minutes.

In giving this instruction, the trial court did not imply to the jurors that it would not accept a mistrial, nor did it attempt to coerce the jury members holding the minority viewpoint to accept the majority position. The trial court's instruction does not contain the restrictive elements that characterize an *Allen* charge or a modified version of an *Allen* charge. It was also within the discretion of the trial court to "urge [the jurors] to come to an agreement." In [ *State v.*] *Governor*, 331 So.2d [443] at 453 [ (La.1976) ], the Louisiana Supreme Court stated:

> It is safe to state as a settled proposition that when the Court is informed by a jury that they cannot agree, it is not error for the court to impress upon them the importance of the case, *urge them to come to an agreement*, and send them back for further deliberation ...

(Emphasis added.)

The charge given by the trial court does not rise to the level of an *Allen* charge or a modified *Allen* charge, and therefore, the trial court did not abuse its discretion by giving this instruction to the jury. This assignment of error lacks merit.

*Id.* at 487-88.

The charge at issue in the present case was not an *Allen* charge. Therefore, Defense counsel's failure to object to the charge did not constitute deficient performance, pursuant to the first prong of the two-part *Strickland* test. Defendant fails to show that trial counsel was ineffective regarding the jury charge.

*State v. Gauthier*, 04-1608, pp. 10-13 (La.App. 3 Cir. 11/2/05), 916 So.2d 314, 321-23. Defendant in the present case cites *State v. Dabney*, 05-53 (La.App. 5 Cir. 6/28/05), 908 So.2d 60, which included a renewed jury charge that contained some similarities to the present one. However, the charge in *Dabney* is distinguishable, because it contained a passage that was obviously fatal under *Allen* and *Nicholson*:

> The trial court also attempted to coerce the jury members who held the minority viewpoint to accept the majority position when it stated, "[i]f there are more people on one side than the other, you can look at that, scratch--it's okay to scratch your head and say, why are they thinking that way and I'm not thinking that way too." In *Nicholson, supra*, the trial court admonished the jurors similarly and the Louisiana Supreme Court found reversible error.

*Id.* at 67. The present case does not include such an exhortation to minority jurors.

In light of *Gauthier*, we find that Defendant's trial counsel was not ineffective for failing to object to the renewed jury charge.

Defendant's final allegation of ineffective assistance of counsel is that his trial counsel failed to object to a faulty jury instruction. During said instruction, the trial court stated:

> The evidence which you should consider consists of the testimony of the witnesses [and of the exhibits such as writings and physical objects] which the court has permitted the parties to introduce.
>
> You must consider only evidence which is admitted during the trial. You may not consider evidence which you were instructed to disregard or to which an objection was sustained.
>
> You are the exclusive judges of the facts. You find from the evidence what facts have been proved and what facts have not been proved. For this purpose you alone determine the credibility of the witnesses, accordingly as you are impressed with his or her veracity.

You may take into account his or her manner on the stand, the probability or improbability of his (or her) statements, the interest or want of interest he (or she) may have in the case, and every circumstance surrounding the giving of his (or her) testimony, which may aid you in weighing the witness' statements.

If you believe that any witness in the case, either for the State or for the defense, has wilfully and deliberately testified falsely to any material fact for the purpose of deceiving you, then I charge you that you are justified in disregarding the entire testimony of such witness as proving nothing and as unworthy of belief. You have the right to accept as true, or reject as false, the testimony of any witness, accordingly as you are impressed with his or her veracity.

The Defendant is permitted by law to testify in his own behalf. The Defendant does not have to testify, and may rely solely on his presumption of innocence. If he does testify, he is governed by the same rules in testing his credibility and the correctness of his statements as every other witness. You have the right to believe or disbelieve him, just as he impresses you as to the truth or falsity of his testimony.

If he does not testify, you may not consider this fact, or permit it to raise a presumption of guilt against him, and you may consider only those facts established to and brought out on the trial of the case, in determining his guilt or innocence.

Defendant notes the settled law regarding a jury's authority to assess credibility: "A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses." *State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285.

The State argues that the error was harmless. The record shows, as a practical matter, that the jury applied the correct standard. If it had accepted the victim's testimony "in whole" then it would have found Defendant guilty as charged.

Also, we note jurisprudence that has approved a similar jury instruction:

In this assignment of error, the defendant complains of the jury charges either given or not given by the trial court. He claims that a charge on credibility erroneously stated the law, that the trial court did not give "not guilty" as a responsive verdict, and that the trial court gave the jury an improper impression as to the importance of the instruction on statements by an accused. As to the charge on credibility, the

defendant complains of the following:

> Ladies and Gentlemen, you are the exclusive judges of the facts of the case and you find from the evidence which facts have been proved, and which facts have not been proved. For this purpose you are the sole judges of the credibility of the witnesses and the weight to be given their testimony. You are to give that degree of credence to the testimony of a witness as you are impressed by their veracity. Now in determining the credibility of witnesses, you may take into account their manner on the witness stand, the probability or improbability of their statements, the interest or the lack of interest they may have in the case, and every fact and circumstance surrounding the giving of their testimony which may aid you in weighing their statements. Now if you believe that any witness in the case has wilfully and deliberately testified falsely to a material fact for the purpose of deceiving you, then I charge you that you would be justified in disregarding the entire testimony of such witness as proving nothing and as unworthy of belief. You have the right to accept as true or reject as false the testimony of any witness accordingly as you are impressed with their veracity.

> There is no merit to the defendant's argument that this charge requires the jury to take an all or nothing approach. The charge given by the trial court is virtually identical to that in *State v. Prestridge*, 399 So.2d 564 (La.1981). The Supreme Court held that the charge did not require the jury to take an all or nothing approach, but that it merely stated that the jury had the right to do so. The court stated that the charge, when read as a whole, was a fair statement of the jury's function as the trier of fact and judge of credibility.

*State v. Walters*, (La.App. 4 Cir.), 582 So.2d 317, 323, *writ denied*, 584 So.2d 1171 La. 1991).

Defendant fails to meet the second prong of *Strickland*, as he has not shown that counsel's failure to object prejudiced his case. For the reasons discussed, this assignment lacks merit.

<u>Assignment of Error No. 7</u>

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by court for errors patent on the face of the record. After reviewing the record, we find that

there is an error patent regarding the sentence imposed. Additionally, the court minutes are in need of correction, which is also raised by Defendant in assignment of error number seven.

The bill alleges that Defendant committed the offense between February 2006 and December 2006. The record indicates that the computer incident occurred in October 2006, but it does not reflect a specific date for the touching incident; only that the touching occurred *before* the computer incident. An approximate date of the touching is necessary to facilitate a review of the legality of the sentence as the penalty provision for indecent behavior with a juvenile was amended in 2006.

Prior to its amendment in 2006, La.R.S.14:81 required that offenders be sentenced to not more than seven years with or without hard labor. Effective August 15, 2006, the legislature amended the penalty provision of La.R.S. 14:81 to provide:

> H. (1) Whoever commits the crime of indecent behavior with juveniles shall be fined not more than five thousand dollars, or imprisoned with or without hard labor for not more than seven years, or both, provided that the defendant shall not be eligible to have his conviction set aside or his prosecution dismissed in accordance with the provisions of Code of Criminal Procedure Article 893.
>
> (2) Whoever commits the crime of indecent behavior with juveniles on a victim under the age of thirteen when the offender is seventeen years of age or older, shall be punished by imprisonment at hard labor for not less than two nor more than twenty-five years. At least two years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.

2006 La.Acts No.103, § 3. The Defendant was sentenced under the new penalty provision, La.R.S. 14:81H(2), to four years at hard labor with the first two years without benefit of parole, probation or suspension of sentence.

A review of the testimony at trial indicates the victim was the only one to reference a time period when the touching occurred. S.M. testified in pertinent part:

Q. You don't ever remember saying, "Dad, I'm ready," and he would have to come and get the shampoo out of the cabinet and put a little drop on your head so you can...

A. That's my mom.

Q. Your mom did that, your dad never did that?

A. No, sir, my dad just, my dad just stayed out of the bathroom.

Q. He would just stay out, okay. Did your dad, this time that you're talking about, that your dad touched you on your privates, was your dad helping you to take a bath?

A. Uh, when I was a baby.

Q. When you were a baby and this happened when you were a baby?

A. Yes, sir.

Q. And that's what your [sic] remember, you were a baby and that's when it happened?

A. Uhh, when, after I finish taking a bath, uh, I was getting out of the tub, I let the water drain out and when I get out of the tub, [M.L., Jr.] came in and tried, and tried to mess with me.

Q. And did what with you?

A. Tried to mess with me.

Q. Tried to mess with you?

A. Uh-huh.

Q. After you got out of the tub...

A. Yes.

. . . .

Q. Your dad never helped you with a bath?

A. Uhh, my dad never helped me with my bath. My mom-- let me tell you what I did this morning. My mom, she came inside, she went inside my room, she woke me up and she laid down in my bed, and I asked her if I can do my bath water and she said yes, and I did my bath water. I put it on hot, very hot and then when the tub became too full, I turned the

-22-

water off and my mom asked me to get some soap and I did. I got a good soap, the good kind of soap, and I put it on my rag. The suds were all over my hand, and I scrubbed, and I put some more on my rag and then I scrubbed myself, and then uh, I got myself out of the tub and dried off.

Q. So you did the whole bathing by yourself, you're old enough now to where you can do it all by yourself, but when you were a baby, could you do it all by yourself?

A. Uh-uh, 'cause I was just little.

The victim's testimony that the touching occurred when she was a "baby" and "little" does not pinpoint the time of the offense. When put in context, however, it indicates that the incident likely occurred before the effective date of the amendment in October of 2006. Accordingly, Defendant's sentence will be amended by deleting the provision providing that the sentence is to be served without the benefit of parole, probation, or suspension of sentence. The trial court will note the change in the court minutes.

In assignment of error number seven, Defendant alleges there are several "errors patent."

Defendant indicates that the court minutes incorrectly state that the jury verdict was unanimous when the transcript indicates the verdict was ten to two. Accordingly, the minutes will be corrected by the trial court to accurately reflect the transcript. Additionally, Defendant states that the minutes of sentencing do not mention the trial court's oral notice regarding sex offender registration. However, this assertion is incorrect, as the minutes correctly reflect that the trial court advised Defendant of his obligation to register as a sex offender. Finally, Defendant complains that the minutes of sentencing refer to an order by the trial court prohibiting a defendant convicted of a felony or misdemeanor and sentenced to a "supervised suspended sentence" from acting as an informant. This is not reflected in the transcript of

sentencing and is surplusage in the minutes of sentencing which has no effect on the sentence. Thus, no action need be taken.

**CONCLUSION:**

For the foregoing reasons, Defendant's conviction is affirmed. However, we find that the sentence is illegally excessive. Consequently, the sentence is amended by deleting the provision providing that the sentence is to be served without the benefit of parole, probation or suspension of sentence, and we instruct the trial court to note the change in the court minutes. Additionally, we instruct the trial court to correct the minutes to accurately reflect the transcript which provides that the jury verdict was ten to two.

**AFFIRMED AND AMENDED**.

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

09-392

STATE OF LOUISIANA

VERSUS

MURRIEL LYLES, JR.

COOKS, J. DISSENTS.

The majority finds "it appears the jury rendered a compromise verdict." This court recently addressed compromise verdicts in *State of Louisiana v. Daryl W. Johnson,* 09-231 (La.App. 3 Cir. 11/04/09), 21 So.3d 1159 wherein this court stated:

> In *State v. Hopkins*, 96-1063, p.3 (La.App. 3 Cir. 3/5/97), 962 So.2d 538, 539-40, this court explained in pertinent part: 'Louisiana juries have the power to enter compromise verdicts, where the responsive verdict is legislatively authorized... Where the defendant acquiesces in the submission of responsive verdicts. The evidence must support either the responsive verdict returned or the crime charged. *State v. Porter*, 93-1106 (La. 7/5/94); 639 So. 2d 1137.

The jury did not find defendant guilty of the crime charged. The verdict was not a compromise verdict as the majority assumes. Instead, the jury returned a responsive verdict of indecent behavior with a juvenile. This offense, a violation of La. R.S 14:81, is a lesser and included offense of aggravated incest, and was listed in the jury charges as a possible responsive verdict. Defendant did not object to the jury charge of this possible, legislatively authorized, responsive verdict. Thus, the evidence must support either a conviction based on La.R.S. 14:81, the responsive verdict, or a conviction based on the original charge, La.R.S. 14:78.1, aggravated incest. I believe the evidence is insufficient to support a conviction based on either charge.

1

A conviction which is based upon insufficient evidence cannot stand as such violates constitutional due process of law. *See* U.S. Const. Amend. XIV; and La. Const. Art. I, Sect. 2. When reviewing the sufficiency of the evidence to support a conviction, we must follow the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed 2d 560 (1979). *See also* La. Code Crim. P. Art. 821(B). Under the *Jackson* standard "the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Captville*, 448 So.2d 676, 678 (La. 1984). As our courts have held "In order for the trier of fact to convict and for the reviewing court to affirm a conviction, the totality of the evidence must exclude reasonable doubt." *State v. Gaspard*, 02-1040 (La.App. 3 Cir. 3/5/2003), 841 So.2d 1021, 1023. La. R.S. 14: 78.1, the offense with which Defendant was originally charged, states in pertinent part:

> A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.
>
> B. The following are prohibited acts under this Section:
>
> (1) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, *indecent behavior with juveniles*, pornography involving juveniles, molestation of a juvenile, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
>
> (2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both. (Emphasis added).

2

The test for determining whether La.R.S. 14:81 is a lesser and included offense of La.R.S. 14:78.1 was articulated by the Louisiana Supreme Court in *State v. Simmons*, 422 So.2d 138, 142 (La. 1982).

> [W]hether the definition of the greater offense necessarily includes all of the elements of the lesser. Stated in another way for practical application, this merely means that, if any reasonable state of facts can be imagined wherein the greater offense is committed without perpetration of the lesser offense, a verdict for the lesser cannot be responsive.

Louisiana Revised Statute 14:81 provides in pertinent part

> A. *Indecent behavior with juveniles* is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
>
> (1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child's age shall not be a defense; or
>
> (2) The transmission of an electronic textual communication or an electronic visual communication depicting lewd or lascivious conduct, text, or images to any person reasonably believed to be under the age of seventeen and reasonably believed to be at least two years younger than the offender. It shall not be a defense that the person who actually receives the transmission is not under the age of seventeen.

(Emphasis added)

A simple reading of the two statutes clearly indicates that indecent behavior with a juvenile is a lesser and included offense of the crime originally charged and is in fact one of the enumerated offenses referenced in La.R.S. 14: 78.1.

The only evidence presented at trial to prove defendant committed the lesser responsive offense of indecent behavior with a juvenile consisted of the following: (1) S.M.'s taped statement at Stuller Place; (2) her trial testimony regarding an alleged touching when she was a baby; and (3) the mother and her friends's testimony regarding what they claim they observed on defendant's laptop computer screen. I believe this evidence, when considered in a light most favorable to the prosecution,

3

was not sufficient to convince a rational trier of fact that all of the elements of an offense under La.R.S. 14:81A.(1) was proved beyond a reasonable doubt.

At the time of trial S.M. was one month short of her tenth birthday. She testified she knew only one alleged incident of improper touching occurred because Jo Ann Stallings told her. S.M.'s recollection of this incident, where her step father allegedly touched her private parts, was based entirely on information provided by a third party who did not see anything and indeed was not anywhere around at the time.

Moreover, a review of S.M.'s taped interview taken at Stuller Place prior to trial, introduced as evidence at trial, reveals S.M.'s account of multiple incidents was internally inconsistent and contradictory to her trial court recollection of only a single incident. At the outset of the interview at Stuller Place, S.M. remarked she did not know if her step father touched her "until a doctor finds out." She then stated defendant only touched her in her private area if she was taking a bath, and that he only touched her in that area once. But later she described several incidents: one when she was taking a bath in her bathroom; another where defendant showed her "it" meaning his private part; and a third when he touched her "boobies" but, she said, he really didn't know he had done so because he was wiping shampoo off of her while helping her bathe as a small child. She recalled her mother touching her "boobies" while bathing her, and touching her butt, telling her she had a "bony butt." She made no distinction between the behavior of her mother and that of defendant. She described the third episode with defendant as occurring when she was in the tub and defendant was outside the tub with all of his clothes on. However, she stated earlier defendant never gave her a bath, and that only her mother bathed her. She also described a second bathing episode, when she was a small child, in which she says

4

while defendant was giving her a bath, shampoo fell on her private area and he was trying to get the shampoo off of her. She stated his clothes were on during this episode and she was in the tub. She said this episode occurred in his bathroom despite having previously stated she was only given baths in her bathroom.

After describing these episodes, she stated there was no other time that defendant touched her in her private area. However, later she described three more incidents: once when he touched her in her private area while his pants were down; second in his office at home when he started touching her; and third when defendant was fussing with her about chewing gum they started "fighting" and rolled down the stairs and he tried to touch her. She said that during the third episode she pushed him away and told him not to touch her anymore and then said she "nearly died laughing." She also stated in the interview that defendant had once tried to put his mouth on her privates.

*She never mentioned this, nor any of these other episodes at trial. At trial she testified defendant only touched her privates once when she was a "baby" and that this occurred during a bathing episode in her bathroom.* S.M. testified she knew this happened because "aunt JoAnn" told her, but during her interview at Stuller Place, she told the interviewer that JoAnn's minor son Robert told her that her step father touched her. B.L. testified Robert told his mother that S.M. had confided in him about defendant touching her private area and Stallings related this information to B.L. *After returning from the lunch break at trial, S.M. stated that she did not remember anything she said before the lunch break.* When she finished her testimony at trial S.M. asked if she could sing a song for everyone and she was allowed to sing a short verse asking for someone to love her. S.M.'s testimony is so equivocal concerning the alleged incidents I believe one cannot ascribe sufficient weight to her

5

multiple accounts to support defendant's conviction for indecent behavior with a juvenile under La. R.S. 14:81 A.(1) nor to the offense charged.

I also believe the testimony of B.L. and Stallings is insufficient to support a conviction under La.R.S. 14:81A.(2) or the offense charged. These witnesses allegedly saw pornographic video on defendant's laptop computer while S.M. was seated on his lap. As to this alleged episode there is no contention and no evidence that defendant inappropriately touched S.M. in any manner during the alleged incident.

Even if the act of watching pornography on defendant's laptop computer with his minor step-child sitting on his lap occurred in the manner alleged, such would not constitute a "lewd and lascivious act" as defined in La.R.S. 14:81(A)(1) and therefore cannot constitute a violation of that statutory provision nor of the offense charged. In *State v. Gaspard*, 841 So.2d at 1024-1025, this court reversed a conviction for attempted indecent behavior with a juvenile based upon the viewing of pornographic film by the defendant and his minor son. In *Gaspard,* the defendant showed pornographic movies to his minor son claiming he did so as some sort of right of passage for his son and not for any sexual gratification for himself. We explained in *Gaspard,*

> At this point in the *Jackson* analysis, there is a clear problem in the State's case. The only acts the State relies on in proving the crime charged consisted of Defendant's showing movies and printed materials to V.G. Nothing in the record indicates Defendant touched, or tried to touch, the boy or himself. There is no suggestion of nudity or physical exposure of any kind by either of them. The evidence does not show Defendant suggested they should engage in any sexual acts. As already mentioned, the State relied upon the act of showing the movies in its trial argument, and repeats it on appeal.

> In *State v. Louviere*, 602 So.2d 1042 (La.App. 4 Cir.1992), *writ denied*, 610 So.2d 796 (La.1993), also an attempted indecent behavior case, the court explained:

6

The only act alleged was the attempted "french kiss" of the two young victims. To determine whether the trier of fact rationally concluded that this act was "lewd or lascivious," or an act tending directly toward a lewd or lascivious act, we must first consider how these terms are defined. According to a recent decision of this court,

> [a] lewd or lascivious act is one which tends to excite lust and to deprave the morals with respect to sexual relations and which is obscene, indecent, and related to sexual impurity or incontinence carried on in a wanton manner.

*State v. Rollins*, 581 So.2d 379, 382 (La.App. 4th Cir.1991) (citing *State v. Holstead*, 354 So.2d 493 (La.1977); *State v. Prejean*, 216 La. 1072, 45 So.2d 627 (1950).) In *State v. Saibold*, 213 La. 415, 34 So.2d 909, 911 (La.1948), the Louisiana Supreme Court, in concluding that the meaning of the terms was sufficiently clear when used together, stated that lewd or lascivious behavior "connotes actions or gestures of a lustful and lecherous nature." Furthermore, "to settle any possible doubt," that court directed attention to the Reporter's Comment to § 14:81, which specifies that the purpose of this section prohibiting indecent behavior with a juvenile is to prohibit behavior that falls short of sexual intercourse carried on with young children as well as indecent sexual displays in their presence.

In addition, a review of reported cases of prosecutions under §14:81 is illustrative of the type of conduct intended to be proscribed. Indecent behavior with a juvenile in which kissing has occurred has uniformly involved more. In *State v. Boutte*, 384 So.2d 773 (La.1980), the defendant was alleged to have stuck his tongue into the mouth of a four (4) year old neighbor. In addition, however, he removed the child's clothing, laid on top of her, and rubbed her genitals. While the defendant in *State v. Jacob*, 461 So.2d 633 (La.App. 1st Cir.1984), did repeatedly kiss a thirteen (13) year old boy, he also pulled the boy on top of him in bed and fondled him during an overnight stay. And, this court found indecent behavior with a juvenile to have occurred when the defendant french kissed two young boys and also indulged in inappropriate body contact, all over a protracted period. *State v. Rollins*, 581 So.2d 379 (La.App. 4th Cir.1991). It appears then that a kiss is proscribed behavior under §14:81 when it is repeated or accompanied by other acts that seem more likely to excite lust and to deprave morals, generally genital contact.

In view of the definition, the stated purpose of the criminal statute, and our review of prior jurisprudence involving the statute, it would be difficult for the rational trier of fact to conclude that the testimony concerning a "bad kiss" proved the occurrence of a lewd and lascivious act. Furthermore, there was no indication that any other action was planned which, together with the kiss, would bring Louviere's conduct within the ambit of the statutory prohibition. Without genital contact or any other obscene or indecent act or repeated occurrence, these kisses fall short of the statutory and judicial requirements of the crime.

*Id*. at 1044-1045.

The court reversed the defendant's conviction.

We recognize *Louviere* is not on all fours with the present case. In *Louviere*, there was an "act," but one that was not "lewd and lascivious." In this case, we find the conduct at issue does not even qualify as an "act" contemplated by the statute. However, assuming it was such an "act," **Defendant's watching or showing the videos to his son was clearly not "lewd and lascivious" under *Louviere*.** Further, as required by La.R.S. 14:81, **there was no evidence Defendant did anything "upon the person" of V.G. and Defendant did not participate in any lewd acts "in the presence of" V.G.** Arguably, the actions depicted on the videos were "lewd and lascivious," but Defendant was not a participant in those actions.

Considering the discussion and the result in *Louviere*, it seems clear that the conduct at issue falls short of the conduct deemed criminal in La.R.S. 14:81. If "french kissing" does not qualify as attempted indecent behavior with a juvenile, **we cannot say *watching sexually-explicit videos qualifies. Regardless of how distasteful and morally debased Defendant's conduct was, the statute he was charged with violating required certain elements which are not present in this case.** While the criminal code provides other offenses which may fit the acts of the Defendant herein, we are unable to speculate on those and must find him not guilty of the crime charged.

*Id.* at 1024-26. (Emphasis added).

Under our holding in *Gaspard,* and the cases relied on therein, the alleged incident involving Defendant's watching pornography while S.M. sat on his lap does not satisfy the elements of La.R.S. 14:81 (A)(1).

Likewise, the Defendant's alleged conduct regarding the alleged viewing of

pornographic video on his laptop with S.M. present does not satisfy the elements of La.R.S. 14:81 (A)(2). In 2006 the legislature added Section (A)(2), quoted above, proscribing the electronic *transmission* of textual or visual materials which are lewd and lascivious "to any person reasonably believed to be younger than seventeen" and at least two years younger than the offender. I have found no jurisprudence interpreting La.R.S. 14:81 (A)(2) regarding its applicability. However, a review of the legislative history of this statutory provision, and the companion statutory provision found in La.R.S. 14:81(C)(2), demonstrates that the wording of the provision is intended to apply to Internet predators and Internet crime involving the **transmission** of "lewd or lascivious" conduct, images or text to any person proscribed by the statute. La.R.S. 14:81 (C)(2) states:

> "Electronic visual communication" means the communication of a visual image made through the use of a computer on-line service, Internet service, or any other means of electronic communication, including but not limited to a local bulletin board service, Internet chat room, electronic mail, or on-line messaging service.

In light of these provisions, I do not believe Defendant's actions qualify as "transmission" of lewd and lascivious visual materials to a minor. The legislative history of these provisions shows that the initial form of the relevant bill, HB 1125 of the 2006 Regular Session, focused on Internet crime. The chief modification proposed in the initial bill was the addition of language regarding whether an offender "reasonably believed" that a victim was underage. Such language is especially applicable in situations, such as Internet contact, in which an offender and victim are not face-to-face. Further, review of the comments at the hearing on pertinent proceedings of the House Committee on the Administration of Criminal Justice, which discussed HB 1125, held on April 20, 2006, clearly show the provision was directed at Internet predators. Additionally, as the amendments to the original

9

bill eliminated a portion that would have defined "lewd and lascivious," the jurisprudential definition articulated by this court in *Gaspard* and *Louviere*, was not altered.

There is no evidence in this case, nor has the state alleged, that Defendant was engaged in any "acts" with S.M. during the episode in which she allegedly viewed pornographic video while seated on Defendant's lap. Additionally, the state's witnesses admit it was entirely possible that what they caught a glimpse of from outside the front door might even have been a pop-up on the computer not pulled up by the Defendant intentionally. S.M.'s testimony about the alleged incident contradicts B.L. and Stallings' account. B.L. and Stallings testified they could see the pornographic images on defendant's laptop computer through the sidelights at the front door but S.M. testified that the door to the room was closed and that B.L. had to open the door to enter the room.

While the State introduced evidence that there was pornographic material on the Defendant's computer, no one at trial could point to specific material allegedly viewed by S.M. during the incident in question. Here, as in *Gaspard*, during the alleged incident with the laptop computer, there is no allegation nor evidence Defendant touched himself or S.M.; there is no evidence or allegation of any nudity or physical exposure of any kind by either Defendant or S.M.; and there is no evidence or allegation that Defendant suggested he and S.M. should engage in any sexual acts. I believe that under these facts, the jury erred as a matter of law in finding Defendant guilty of indecent behavior with a juvenile under the provisions of La.R.S. 14:81(A)(2).

The majority admits in its discussion of the trial court's error in sentencing that the only evidence that Defendant ever inappropriately touched the victim at some

10

unknown time in the distant past is the young victim's testimony that it happened when she was "a baby." The victim gives no clue as to what age she is referring to. I reiterate what I pointed out above, the victim testified the only way she "knows" such an event occurred when she was a baby was because her aunt JoAnn told her it happened. This is entirely insufficient to prove beyond a reasonable doubt that Defendant ever inappropriately touched the victim. The majority concludes that this episode "likely occurred before the effective date of the amendment in October of 2006." This conclusion underscores the insufficiency of this "evidence" to support a conviction on either the original charge or the responsive verdict.

For the reasons as stated above I must respectfully dissent.

11